UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARISSA ANGELIQUE FOURNIER,

                              **Plaintiff,**

    v.                                                    5:13-CV-00702

**BANK OF AMERICA CORPORATION;**
**BANK OF AMERICA, N.A.;**
**BOA HOME LOAN SERVICING, LP,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I.  INTRODUCTION

      Plaintiff, Marissa Angelique Fournier, brings an action alleging that Defendants, Bank of America Corporation ("BAC"), and Bank of America, N.A. for itself and as successor by merger to BAC Home Loans Servicing, LP, sued herein as BOA Home Loan Servicing, LP ("BANA"), violated the Real Estate Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), and Section 349 of the New York General Business Law. Plaintiff also asserts claims for breach of contract and intentional infliction of emotional distress. See Compl., dkt. #1. Defendants move pursuant to FED. R. CIV. P. 12(b)(6) to dismiss all of these claims. See Mot. Dismiss, dkt. #18. Plaintiff has filed opposition to the motion and nominally asserted a cross-motion for injunctive relief. See

1

dkt. # 26.[1]

For the reasons that follow, Defendants' motion is granted for each claim, however Plaintiff is granted leave to replead with respect to the RESPA, FDCPA, and Section 349 claims. Plaintiff's cross motion for injunctive relief is denied.

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 570). A complaint does not suffice "if it tenders naked assertions devoid of further factual

---

[1] In dkt. # 26, entitled "Opposition to Defendants' Motion to Dismiss, Memorandum of Law and Support of Opposition, and Motion for Temporary Injunction or Restraining Order," Plaintiff essentially argues against granting Defendants' motion. As to the claim for injunctive relief, Plaintiff merely requests in her "Wherefore" clause that "the Court issue a temporary restraining order or injunction preventing BANA from foreclosing on [Plaintiff's] home at least until this instant case is resolved." Dkt. # 26, p. 14.

2

enhancement." Ashcroft, 129 S. Ct. at 1949. Legal conclusions must be supported by factual allegations. Id. at 1950. Nonetheless "[a] document filed *pro se* is 'to be liberally construed' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Therefore, "[a] *pro se* complaint 'should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (alterations in original) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991)).

## III. BACKGROUND

Plaintiff purchased a home in Cicero, New York with a mortgage loan on October 28, 2008. Dkt. #1 ¶ 11. She alleges that "Defendants claim to hold the note on the mortgage," "serviced the mortgage," and that Plaintiff "is not aware of any other person or entity who claims to hold the note . . . ."[2] Id. ¶¶ 12–13. According to the Complaint, from November 1, 2008 until March 1, 2011, Plaintiff made regular mortgage payments. Id. ¶ 14. However, beginning in January of 2010, Plaintiff began submitting requests for a federally funded loan modification "[i]n anticipation of future financial distress" caused by a divorce with her husband. Id. ¶¶ 15-16. Between January 6, 2010 and August 22, 2011, Plaintiff submitted four loan modification applications, id. ¶ 16, but became "[f]rustrated by the unwarranted denials of her applications . . . ." Id. ¶ 21. On March 20, 2012, Plaintiff

---

[2]Throughout Plaintiff's complaint, she refers to Defendants collectively, as though they are one corporate entity. The Court follows this practice solely for the purpose of restating Plaintiff's allegations.

3

sent a Qualified Written Request ("QWR"), requesting "all assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of Plaintiff's mortgage, deed of trust, promissory note or other document that secures payment by Plaintiff to her alleged obligation in this account from the inception of her loan to the present date." Id. ¶¶ 27-28. Between May 4, 2012 and July 9, 2012, Plaintiff sent three more QWRs. Id. ¶¶ 29-31. On July 7, 2012, Defendants sent Plaintiff a letter "offering to negotiate a commitment to modify the mortgage and approving the Plaintiff for Workout Assistance," id. ¶ 39, and on July 24, 2012, Plaintiff received a response to her QWRs. Id. ¶ 32. On July 10, 2012, Plaintiff sent Defendants a letter "outlining the viable claims she believed she had against the Defendants and offering to settle the mater outside of court." Id. ¶ 43. The proposed settlement consisted of three conditions:

> a. Plaintiff would release and hold harmless the Defendants from all claims outlined in the above letter, b. The agreement is for accord and satisfaction of the mortgage, and c. Defendant shall provide the Plaintiff with a satisfaction of mortgage, releasing any rights or claims it had on the Plaintiff's residence.

Id. ¶ 43.

In addition, Plaintiff included a cashier's check for $1,866.12, and stated in her letter that "if the Defendants did not agree they should return the check and if they did agree, they should cash the check . . ." and become bound by Plaintiff's terms. Id. ¶ 44. Defendants endorsed and cashed the check, but on July 30, 2012 sent Plaintiff a letter "with instructions and pay off procedures." Id. ¶¶ 45, 47. On July 31, 2012, Plaintiff sent Defendants a letter "requesting that Defendants uphold their end of the agreement," hired an attorney, and sent a letter of representation to the Defendants. Id. ¶¶ 48-49. On two

4

separate occasions before Plaintiff fired her attorney on October 1, 2012, Defendants sent letters directly to the Plaintiff despite being aware that Plaintiff was represented by counsel. Id. ¶¶ 54, 56-57. Plaintiff claims that in the ensuing months, Defendants "continued to harass Plaintiff by threatening to foreclose on the Plaintiff's residence," and failed to issue a satisfaction of mortgage. Id. ¶ 58. Plaintiff also claims that she suffered from "personal humiliation, embarrassment, mental anguish, and severe emotional distress, manifested in physical ailments such as headaches, stomach discomfort, severe depression, severe anxiety, lack of sleep, inability to get out of bed, and an attempted suicide." Id. ¶ 59. Lastly she claims to have "made extensive improvements to the residence in reliance on the accord and satisfaction agreement . . . with the Defendant." Id. ¶ 60.

Plaintiff brings five causes of action against the Defendants. First, she claims that Defendants "systematically and continuously" violated RESPA by failing to respond to Plaintiff's first three QWRs, and by failing to "provid[e] the name and telephone number of any individual employed by, or the offices or department of, the servicer who can provide assistance to the borrower." Id. ¶ 64. Next, Plaintiff alleges that Defendants violated FDCPA by contacting Plaintiff when they knew Plaintiff was represented by counsel, and "engaged in conduct, the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt . . . ." Id. ¶¶ 69-70. Plaintiff also alleges breach of a contract, purportedly occuring when Defendants cashed the cashier's check sent with the July 10, 2012 letter while refusing to grant an accord and satisfaction. Id. ¶¶ 73–74, 84. Plaintiff's fourth claim alleges that Defendants engaged in deceptive

5

business practices in violations of Section 349 of New York General Business Law. Id. ¶ 87. Lastly, Plaintiff asserts intentional infliction of emotional distress resulting from Defendants' continual and intentional violation of the law. Id. ¶¶ 94, 99. The Defendants move to dismiss each claim. See Defs. Mem. L., dkt. #19.

## IV.   DISCUSSION

### a.   BAC as a defendant.

Defendants argue that the Court should dismiss BAC with prejudice "because [Plaintiff] has not alleged any facts that reflect any relationship between BAC and herself or any wrongdoing on the part of BAC." Dkt. #19 at 18. The Defendants further state that while BAC is the corporate parent of BANA, that status is "insufficient to subject [BAC] to liability in this action." Id. at 19. The Court agrees that the Complaint, as it stands, states no cognizable claims against BAC. Gorham-DiMaggio v. Countrywide Home Loans, Inc., Civ. No. 1:08-CV-019 (LEK/RFT), 2009 WL 1748743 at *10 (N.D.N.Y. June 19, 2009) (citing Beck v. Consolidated Rail Corp., 394 F. Supp 2d. 632, 638 (S.D.N.Y. 2005)) ("[A]s [a] general rule of law, a shareholder, which would include a parent corporation's controlling ownership interest in a subsidiary, cannot be held liable for the acts of the corporation, without a greater showing of dominion and control over the subsidiary."), *aff'd*, 421 F. App'x 97 (2d Cir. 2011). Therefore the Court dismisses all claims with respect to BAC. However, Plaintiff is a *pro se* and, as discussed above, the Court must read her complaint liberally. In an amended complaint, Plaintiff could plausibly allege facts supporting a valid claim or claims against BAC. Consequently, the Court will permit Plaintiff leave to replead specific allegations against BAC as they relate to the claims not

6

dismissed with prejudice in this Decision and Order. To bring a valid claim against BAC that will survive a motion to dismiss, the Plaintiff must allege additional facts that implicate BAC directly. Thus, a proper amended complaint that includes BAC as a Defendant must allege facts identifying actions taken directly by BAC, if such facts exist, and not merely actions taken by the Defendants collectively.

### b. RESPA Claims

Plaintiff's RESPA claims arise from her allegation that Defendants failed to provide information requested in three QWRs within the statutorily required time frame, while also failing to "provid[e] the name and telephone number of any individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." Dkt. #1 ¶ 64. Additionally, Plaintiff asserts that Defendants' illegal conduct was "systematic and continuous" with respect to the Plaintiff. Id. Defendants contend that Plaintiff's RESPA claims fail to state claims for damages, dkt. #19 at 11-13, and that Plaintiff failed to allege "any facts to demonstrate that she sent proper QWRs" to Defendants. Id. at 13.

#### 1. Damages

First, the Defendants claim that Plaintiff fails to state a claim for either actual damages or statutory damages arising from "'a pattern or practice of noncompliance with the requirements of' RESPA," Id. at 12 (quoting 12 U.S.C. § 2605(f)(1)(B)). Under Section 2605(f)(1)(A), "a plaintiff must allege actual damages resulting from a violation of [RESPA]." Corazzini v. Litton Loan Servicing L.L.P., No. 1:09-cv-199 (MAD/ATB), 2010 WL 6787231, at *11 (N.D.N.Y. June 15, 2010) (citing 12 U.S.C. § 2605(f)(1)(A)); see also Gorham-DiMaggio, 2009 WL 1748743, at *9 (demonstrating that RESPA requires a

showing of actual damages and proximate cause). Defendants contend that Plaintiff has failed to show any damages. Dkt. #19 at 11-12. Plaintiff alleges, in wholly conclusory terms, that Defendants' actions were the proximate cause of her extreme emotional distress, dkt. # 1 ¶ ¶ 66, 99, "manifested in physical ailments such as headaches, stomach discomfort, severe depression, severe anxiety, lack of sleep, inability to get out of bed, and an attempted suicide." Id. ¶ 59. Because Plaintiff fails to state how the Defendants' alleged violations of RESPA are the proximate cause of her injuries, the Court agrees with Defendants that Plaintiff has failed to allege facts plausibly demonstrating that her physical ailments constitute recoverable damages under RESPA.

Plaintiff also argues that she has monetary damages of $1,866.12 because BANA has "a contractual duty to return" the check which she allegedly sent in connection with the purported accord and satisfaction. (Opp. at 10). Plaintiff offers no explanation as to why she is entitled to the return of these funds or how these damages arise from any purported RESPA violation.

RESPA also allows an individual to seek "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. 2605(f)(1)(B). Defendants contend that Plaintiff has failed to "establish 'a pattern or practice of noncompliance with the requirements' of RESPA." Dkt. #19 at 12 (quoting 12 U.S.C. § 2605(f)(1)(B)). "'Pattern or practice' means 'a standard or routine way of operating.'" Gorbaty v. Wells Fargo Bank, N.A., 10-CV-3291 (NGG/SMG), 2012 U.S. Dist. LEXIS 55284 at 19 (E.D.N.Y. April 18, 2012) (quoting McLean v. GMAX Mortg. Corp., 595 F. Supp. 2d 1360, 1365 (S.D.

Fla. 2009)). In Gorbaty, the Court found that two violations of RESPA were insufficient to establish "a pattern or practice" under 2605(f)(1)(B). Gorbaty, 2012 U.S. Dist. LEXIS 55284 at 19; see also McLean, 595 F. Supp. 2d at 1365 (same); *In re* Maxwell, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (same); but see Ploog v. Homeside Lending Inc., 209 F. Supp. 2d 863, 868 (N.D. Ill. 2002) (finding five instances of noncompliance with RESPA to be sufficient to establish statutory damages). In light of Plaintiff's allegation that "Defendants are regularly engaged in the servicing of residential mortgages," dkt. #1 ¶ 8, the Court agrees with Defendants that three instances of noncompliance with RESPA is insufficient to establish a pattern or practice of noncompliance, particularly where Defendants responded to Plaintiff's fourth alleged QWR in a timely manner. See *In re* Maxwell, 281 B.R. at 123 (ruling that two violations of RESPA were insufficient to establish a pattern or practice of noncompliance, where there was testimony that the loan provider serviced "a large number of loans in most, if not all, of the 50 states . . . ."). As a result, the Court finds that Plaintiff has failed to state a claim under RESPA.

### 2. **Propriety of Plaintiff's QWRs**

Defendants also contends that Plaintiff has not alleged sufficient facts to demonstrate that the four letters she sent to Defendant between March 20, 2012 and July 9, 2012 are actually QWRs within the meaning of RESPA, which states:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

9

12 U.S.C. § 2605(e)(1)(B).

Plaintiff failed to allege, in nonconclusory terms, that any of her four alleged QWRs complied with the statutory definition of a QWR. Therefore, the Court must conclude that Plaintiff's letters sent on or about March 20, 2012, May 4, 2012, May 11, 2012, and July 9, 2012 were not proper QWRs within the meaning of RESPA.

### 3. Leave to Replead RESPA Claims

The Court finds that Plaintiff has failed to allege damages under Section 2605(f)(1), or properly demonstrated her letters dated March 20, 2012, May 4, 2012, May 11, 2012, and July 9, 2012 qualify as QWRs within the meaning of 12 U.S.C. § 2605(e)(1)(B). However, the Court grants Plaintiff leave to replead in order to correct these deficiencies. A liberal reading of the Complaint does not foreclose the possibility that Plaintiff may have a valid RESPA claim. To bring a valid RESPA claim that will survive a motion to dismiss, the Plaintiff must allege additional facts either that: (1) she suffered damages that were proximately caused by Defendants' failure to timely respond to Plaintiff's first three letters that she contends were QWRs, or, (2) Defendants engaged in a pattern or practice of noncompliance with RESPA. Furthermore, Plaintiff must allege facts illustrating that her alleged QWRs meet the statutory requirements of 12 U.S.C. § 2605(e)(1)(B). Failure to address these deficiencies will result in the RESPA claim being dismissed with prejudice.

### b. FDCPA Claims

Plaintiff also claims that the Defendants violated the FDCPA by contacting Plaintiff despite the fact Defendants knew Plaintiff was represented by legal counsel, and by "engag[ing] in conduct, the natural consequence of which was to harass, oppress, or

abuse a person in connection with the collection of a debt, in violation of the FDCPA." Dkt. #1 at ¶¶ 69-71. In response, Defendants argue that "BANA originated [Plaintiff's] mortgage loan, and accordingly, is not a debt collector under the statute." Dkt. #19 at 14. The Court agrees that Defendants' actions are not covered by FDCPA. "It is the purpose of [the FDCPA] to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). However, the statute defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "In particular, FDCPA excludes originators of credit from the definition of 'debt collector' under certain conditions . . . ." McAnaney v. Astoria Financial Corp., 357 F. Supp. 2d 578, 592 (E.D.N.Y. 2005). The statute states that the term "debt collector" does not include,

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) *concerns a debt which was originated by such person*; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F) (emphasis added); see also, Doherty v. Citibank (S.D.) N.A., 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005) ("[T]he FDCPA expressly limits its application to debt collectors, not creditors . . . .").

In the case at hand, it is clear from the mortgage[3] that BANA is the original lender. Dkt. #18, ex. 2 at 2. Furthermore, in the Complaint, Plaintiff acknowledges that she "is not aware of any other person or entity who claims to hold the note on the aforementioned mortgage," aside from the Defendants. Dkt. #1 at ¶¶ 12-13. Therefore, the Court concludes that because BANA originated the loan, the express language of the FDCPA precludes any claims against BANA. As a result, the FDCPA claim against BANA is dismissed with prejudice. For this reason, the Court need not address whether BANA's communications with Plaintiff constituted attempts to collect a debt.

With respect to BAC, this issue becomes more complicated because Plaintiff improperly refers to BANA and BAC collectively, even though they are distinct corporate entities. See generally id. Had Plaintiff alleged that BAC attempted to collect a debt owned under Plaintiff's mortgage,[4] BAC could be subject to FDCPA, assuming that its actions violated the law, because BAC is not the originator of the loan. It appears that Defendants have conceded as much. See dkt. #19 at 14 n.9. For the reasons stated above, the Court finds it appropriate to allow Plaintiff to submit an amended complaint with respect to specific allegations against BAC. As a consequence, the Court cannot foreclose the possibility that Plaintiff may raise a valid claim against BAC under FDCPA. However, the current Complaint makes no such allegations, and therefore the Court will

---

[3]Where a complaint incorporates a document by reference, the court may deem that document to be a part of the complaint, and reference it when deciding whether dismissal is appropriate under FED. R. CIV. P. 12(b)(6). Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co., 62 F.3d 69, 72 (1995) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991)). Plaintiff referenced her mortgage in the Complaint, Dkt. #1 ¶ 11–13, and therefore it is appropriate for the Court to consider the full contents of that document.

[4]This is an assertion entirely absent from the Complaint.

dismiss the FDCPA claim until proper allegations are made in an amended complaint.

### c. Breach of Contract Claims

Plaintiff claims that there was an accord and satisfaction when Defendants endorsed and cashed the check of $1,866.12, which was sent with Plaintiff's July 10, 2012 letter, and that this contract was breached when BANA demanded that Plaintiff continue paying her mortgage. Dkt. #1 ¶¶ 72–84. Defendants argue that such a contract was explicitly precluded by the terms of the mortgage agreement. Dkt. #19 at 9. As explained above, Plaintiff referenced her mortgage in the complaint, Dkt. #1 ¶ 11–13, and therefore the Court may consider the full contents of that document. Defendants cites to three clauses from the mortgage that bar Plaintiff's breach of contract claim:

> No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

Dkt. #18, ex. 2 at 5.

> Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

Id. at 12.

> When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied.

13

Id. at 16.

The Court agrees with Defendants that "[t]hese contractual provisions . . . prevent [Plaintiff] from asserting that a partial tender creates an accord and satisfaction." Dkt. #19 at 9. Therefore, Plaintiff's contract claim fails to state a claim upon which relief can be granted, and must be dismissed. Because the express language of the mortgage barred a contract of the kind alleged by Plaintiff, there is no indication from the Complaint that Plaintiff has a valid breach of contract claim of the type asserted.

Moreover, Plaintiff's opposition papers fail to create a question of fact concerning the amount that she owed such to avoid dismissal of the breach of contract claims. First, BANA's August 17, 2012 letter to her does not identify any bona fide dispute over the amount due, but instead refutes her claim. Second, BANA's recording of a corrective mortgage due to the inadvertent omission of a Notary Public's stamp on the first document sent for recording does not created a dispute as to the amount owed under the note. See, e.g., Commonwealth Land Title Ins. Co. v. Lituchy, 188 A.D.2d 353, 591 N.Y.S.2d 770 (1st Dep't 1992) ("the original failure to record the mortgage and pay the tax does not render the mortgage and note unenforceable"). And third, BANA was not obligated to offer Plaintiff a loan modification due to the asserted "wrongful delay and denials of [Plaintiff's] modification application." See, e.g., Wright v. Bank of Am., N.A., No. 153533/12, 2013 WL 6409966 at *7, 2013 N.Y. Slip Op. 33074(U) (N.Y. Sup., N.Y. Cty. Dec. 4, 2013) ("a mortgage lender is under no legal obligation to modify a loan"); JP Morgan Chase Bank, Nat'l Ass'n v. Ilardo, 36 Misc.3d 359, 375, 940 N.Y.S.2d 829, 841 (N.Y. Sup., Suffolk Cty. 2012) ("there is no federal entitlement to a permanent loan

14

modification"). Interest accrued on the loan because, by her own admission, Plaintiff voluntarily stopped making mortgage payments. This does not amount to a plausible breach of contract claim. Consequently, the Breach of Contract claims are dismissed with prejudice.

### d.     N.Y. GEN. BUS. LAW § 349 Claims

Plaintiff's next contention is that Defendants violated N.Y. Gen. Bus. Law § 349. Dkt #1 ¶¶ 85-92. Section 349 makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State. N.Y. GEN. BUS. LAW § 349(a). "[C]ourts have held that '[t]o make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" McLean-Laprade v. HSBC, No. 7:12-CV-1774 (LEK/ATB), 2013 WL 3930565 at *6 (N.D.N.Y. July 30, 2013) (quoting Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)); see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (N.Y.1995) (same). Furthermore, "[p]rivate contractual disputes are usually not within the statute because they are "unique to the parties." Harary v. Allstate Ins. Co., 983 F. Supp. 95, 98 (E.D.N.Y. 1997) (quoting Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 25). In Corazzini v. Litton Loan Servicing L.L.P., No. 1:09-CV-0199 (LEK/RFT), 2010 WL 1132683 at *8 (N.D.N.Y. Mar. 23, 2010), the court found:

> Plaintiff's claim is indeed deficient. The only factual allegations contained in her Complaint pertain to a dispute over late fees between the parties with respect to Plaintiff's mortgage; put differently, Plaintiff only describes a private contractual dispute, and her Complaint lacks any assertions of facts

as to deceptive business practices aimed at the public. There is no basis in her pleadings that might plausibly indicate that the alleged wrongful conduct by Defendants against her applies to consumers generally. Such inadequacy is fatal. Section 349 does not provide an opportunity for Plaintiff to style her personal dispute with Defendants as a broad practice without the benefit of factual allegations that would show conduct under the ambit of the Law.

See also McLean-Laprade, 2013 WL 3930565 at *6 (dismissing a NY GBL § 349 claim because it "involve[d] a private contractual dispute that [was] unique to the parties involved. Plaintiffs ha[d] not shown that Defendants' allegedly deceptive acts were directed at consumers generally or had a broad impact on consumers at large.").

Here, Plaintiff has failed to allege any facts illustrating misleading consumer-oriented business practices. See generally dkt. #1. Plaintiff's allegation under Section 349 relies entirely on her FDCPA, RESPA and breach of contract claims, and only implicate Defendants' conduct towards Plaintiff. Id. ¶ 87. The Complaint lacks any assertion demonstrating that Defendants engaged in deceptive business practices with the public in general. See generally dkt. #1. Therefore, this claim must be dismissed under FED. R. CIV. P. 12(b)(6). However, because Plaintiff is a *pro se*, the Court will grant her leave to replead on this issue. A liberal reading of the Complaint does not foreclose the possibility that Plaintiff may have a valid Section 349 claim. To bring a claim that will survive a motion to dismiss, the Plaintiff must allege additional facts that demonstrate Defendants' conduct satisfied each element required under Section 349, as described above. Failure to do so will result in the Section 349 claim being dismissed with prejudice.

### e. Intentional Infliction of Emotional Distress Claims

Plaintiff also alleges claims of Intentional Infliction of Emotional Distress. Dkt. #1 ¶¶

16

93-99. Defendants argue that these claims are time barred by the one year statute of limitations. Dkt. #19 at 6. "In New York, a cause of action for intentional infliction of emotional distress accrues on the date of injury and carries a one year statute of limitations." Waldran v. Milana, No. 5:10-CV-0065 (GTS/DEP), 2013 WL 2445047, at *4 (N.D.N.Y. June 5, 2013) (citing Wilson v. Erra, 942 N.Y.S.2d 127, 129 (N.Y. App. Div. 2012)); see also N.Y. C.P.L.R. 215(3) (McKinney 2006). Plaintiff alleges that she put Defendants on notice of her emotional distress in a letter dated April 26, 2012. Dkt. #1 at ¶ 37. However, she did not bring this action until June 19, 2013. See generally dkt. #1. Therefore, the claims of intentional infliction of emotional distress are time barred. The Court dismisses these claims with prejudice.

### f.   Request for temporary injunction

Plaintiff requests a temporary restraining order and a preliminary injunction to prevent BANA from pursuing a foreclosure case in state court, at least until the instant case is resolved. Pltf Opp., dkt. # 26, at 14. In order to be awarded injunctive relief, the Plaintiff must first demonstrate "'either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor.'" WNET, Thirteen v. Aereo, Inc., 712 F.3d 676, 684 (2d Cir. 2013)(quoting Salinger v. Colting, 607 F.3d 68, 79 (2d Cir. 2010)). "Second, a plaintiff seeking a preliminary injunction must demonstrate that [s]he is likely to suffer irreparable injury in the absence of an injunction." Id. (internal quotation marks and citations omitted). The irreparable harm suffered by the plaintiff must be "non-compensable in terms of money damages." Wisdom Import Sales Co. L.L.C. v.

17

Labatt Brewing Co., Ltd., 339 F.3d 101, 113-14 (2d Cir. 2003).

Plaintiff has failed to allege any facts plausibly indicating that she would suffer irreparable harm that could not be remedied by monetary compensation should the temporary restraining order not be granted. Moreover, Plaintiff continues to reside in the mortgaged property despite the fact that she has not made a mortgage payment since March 2011. Since Plaintiff cannot establish that she will suffer irreparable harm, the Court denies Plaintiff's request for a temporary restraining order or a preliminary injunction to prevent BANA from pursuing a foreclosure case in state court.

**V. CONCLUSION**

For the reasons discussed above, Defendants' Motion to Dismiss [dkt. # 18] is **GRANTED**.

The FDCPA claim against BANA, the breach of contract claims against all defendants, and the intentional infliction of emotional distress claims against all defendants are **DISMISSED WITH PREJUDICE**.

The RESPA claims against all defendants, the FDCPA claim against BAC, and the N.Y. Gen. Bus. Law § 349 claims against all defendants are **DISMISSED WITHOUT PREJUDICE.**

Plaintiff is **GRANTED LEAVE TO REPLEAD** with respect to BAC's involvement in this case, the RESPA claims, the FDCPA claim against BAC, and the N.Y. Gen. Bus. Law § 349 claims. Plaintiff is instructed to submit an amended complaint correcting the

18

deficiencies in each claim, as described in this Decision and Order.[5]  **Plaintiff must replead within thirty (30) days of the date of this Decision and Order.  Failure do so will result in the Court dismissing all remaining claims with prejudice, without further order of the Court.**

Plaintiff's cross-motion for injunctive relief [dkt. # 26] is **DENIED**.

**IT IS SO ORDERED**.

Dated: February 4, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[5]Any amended complaint must fully comply with FED. R. CIV. P. 11(b) which requires a party to sign a pleading thereby certifying:

that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Failure to comply with this rule could result in a Court issued sanction, or a motion for sanctions brought by the opposing party.  See FED. R. CIV. P. 11(c).